```
                UNITED STATES DISTRICT COURT
                  DISTRICT OF CONNECTICUT

--------------------------------x
VANCO TRADING, INC.,            :
                                :
         Plaintiff,             :
                                :   Case No. 3:09CV219 (AWT)
     v.                         :
                                :
ODFJELL TERMINALS (HOUSTON) LP  :
                                :
         Defendant.             :
--------------------------------x
```

### RULING ON MOTION TO DISMISS

The plaintiff, Vanco Trading, Inc. ("Vanco"), brings this action against the defendant, Odfjell Terminals (Houston) LP ("Odfjell"), alleging fraud in the inducement, fraud, indemnity, and breach of contract.  Odfjell has moved to dismiss the complaint for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2).[1]  For the reasons set forth below, the motion is being granted.

---

[1] The court notes that the defendant's assertion of a counterclaim is not deemed a waiver of it's affirmative defense of lack of personal jurisdiction.  "[W]hen a counterclaim is asserted along with a jurisdictional defense, the counterclaim is treated as being conditional, essentially hypothecated upon an adverse ruling on Defendant's jurisdictional defenses." M & D Information Systems, Inc. v. The Tower Group, Inc., No. 3:05cv552(PCD), 2006 WL 7528800, *7 (D. Conn. March 21, 2006) (internal quotation marks omitted).  See also 5C Wright and Miller, Federal Practice and Procedure: Civil 3d § 1397 (3d ed. 2004) ("Effect of Interposing a Claim for Relief").

1

## I. FACTUAL BACKGROUND

Vanco is a Delaware corporation with its place of business in Darien, Connecticut. Odfjell is a Delaware corporation with a place of business in Texas. It does not have a place of business in Connecticut.

In or about April or May of 2005, Vanco, after selling a quantity of gylcerine to buyers in India, contacted Sound Tankers Chartering to canvass the shipping market for vessels which could transport the glycerine from Texas to India. Sound Tankers identified the Bow Favour, an Odfjell-group vessel, as the most convenient vessel in terms of timing. Vanco proceeded to seek quotes for terminals that could take railcars loaded with the glycerine, store them until the vessel arrived, and load the cargo from the railcars into the vessel. In the course of its inquiries, Jan Van Eck of Vanco spoke with Fermin Navarro of Odfjell. Navarro told Van Eck that if Vanco used an Odfjell-group vessel and an Odfjell terminal, there would be no demurrage fee if the railcars arrived on time.

Van Eck and Navarro began to negotiate a contract over the course of several telephone calls. On or about May 19, 2005, Vanco entered into a storage/throughput intermodal contract with Odfjell. Odfjell faxed a proposed contract from Texas to Vanco's office in Connecticut, where Van Eck

2

made a modification to the proposed contract, signed it and faxed it back to Odfjell in Texas.

The railcars loaded with Vanco's cargo arrived at the terminal on time, but due to vessel and terminal operational issues the loading from the railcars to the vessel was delayed.  The vessel Bow Favour, an Odfjell-group vessel, charged Vanco a demurrage fee.  Although Vanco complained, the demurrage fee was not cancelled.  When Vanco refused to pay the demurrage fee, the Odfjell company owning the vessel Bow Favour commenced an arbitration proceeding in London.  The result of the arbitration was an award of $79,116.56 in favor of the vessel owner, including interest up to January 6, 2009 (plus continuing interest), the costs of the arbitration and attorneys' fees.

**II.  LEGAL STANDARD**

On a Rule (12)(b)(2) motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of showing that the court has jurisdiction over the defendant. <u>Metropolitan Life Insurance Co. v. Robertson-Ceco Corp.</u>, 84 F.3d 560, 566 (2d Cir.1996), <u>cert. denied</u>, 519 U.S. 1006, 117 S.Ct. 508, 136 L.Ed.2d 398 (1997).  Where a defendant challenges "only the sufficiency of the plaintiff's factual allegation, in effect demurring by filing a Rule 12(b)(2) motion, the plaintiff need persuade the court only that its

3

factual allegations constitute a prima facie showing of jurisdiction." Ball v. Metallurgie Hoboken-Overpelt, S.A., 902 F.2d 194, 196 (2d Cir.1990).  "When a motion to dismiss for lack of jurisdiction is decided on the basis of affidavits and other written materials ... the allegations in the complaint must be taken as true to the extent they are uncontroverted by the defendant's affidavits." See Transport, Wiking, Trader, Schiffanhtsgesellschaft, MBH & Co., Kommanditgesellschaft v. Navimpex Centrala Navala, 989 F.2d 572, 580 (2d Cir.1993)(quoting Taylor v. Phelan, 912 F.2d 429, 431 (10th Cir.1990) (per curiam) (citations omitted), *cert. denied,* 498 U.S. 1068, 111 S.Ct. 786, 112 L.Ed.2d 849 (1991)). However, "[i]f the parties present conflicting affidavits, all factual disputes are resolved in the plaintiff's favor, and the plaintiff's prima facie showing is sufficient notwithstanding the contrary presentation by the moving party." Id.  However, after discovery, a Rule 12(b)(2) movant contesting the non-movant's factual allegations cannot be defeated merely by the prima facie showing, but is entitled to a hearing at which the non-movant must prove the existence of jurisdiction by a preponderance of the evidence.  See Ball, 902 F.2d at 196 n. 3.

**III. DISCUSSION**

It is well settled that the exercise of long-arm jurisdiction under Connecticut law requires a two part inquiry.  See Frazer v. McGowan, 198 Conn. 243, 246 (1986); Lombard Bros., Inc. v. General Asset Management Co., 190 Conn. 245, 250 (1983).  That two part inquiry is "first, whether jurisdiction is permitted by the statute, and second, whether jurisdiction is permitted by the federal constitution."  Thomason v. Chemical Bank, 234 Conn. 281, 295 (1995).

**A. Connecticut Long-Arm Statute**

Vanco contends that jurisdiction over Odfjell is permitted under the Connecticut long-arm statute, Conn. Gen. Stat. §§ 33-1219(f)(1) and (4).  The court agrees. Connecticut's long-arm statute relating to foreign corporations provides, in pertinent part, that:

> Every foreign corporation shall be subject to suit in this state, by a resident of this state or by a person having a usual place of business in this state, whether or not such foreign corporation is conducting or has conducted affairs in this state and whether or not it is engaged exclusively in interstate or foreign commerce, on any cause of action arising as follows: (1) Out of any contract made in this state or to be performed in this state; . . . or (4) out of tortious conduct in this state, whether arising out of repeated activity or single acts, and whether arising out of misfeasance or nonfeasance.

Conn. Gen. Stat. §33-1219(f).

5

Odfjell argues that Vanco cannot satisfy the requirements of §33-1219(f)(1) because the contract was not made in Connecticut.  It contends that "the contract was accepted when it was received by the Defendant in Texas, as clearly stated on the Contract form."  (Memorandum of Law in Reply to Plaintiff's Opposition to Motion to Dismiss (Doc. No. 25), at 2.)

"It is the general rule, followed in Connecticut, that a contract is considered made when and where the last thing is done which is necessary to create an effective agreement."  Electric Regulator Corporation v. Sterling Extruder Corporation, 280 F. Supp. 550, 555 (1968).  See also H. Lewis Packaging, LLC v. Spectrum Plastics, Inc., 296 F. Supp. 2d 234, 239 (D. Conn. 2003); Chemical Trading, Inc. v. Manufacture de Produits Chimiques de Tournan, 870 F. Supp. 21, 24 (D. Conn. 1994).  The analysis hinges on the terms of the contract and determination of what was the last act necessary to create the contract.  "As with any question of contractual interpretation, [the court's] initial guide must be the actual words used in the contract."  Tallmadge Bros., Inc., et al. v. Iroquois Gas Transmission Sys., 252 Conn. 479, 488-89 (2000).  "Where the language of the contract is clear and unambgious, the contract is to be given effect according to its terms.  A court will not

6

torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity." Id., at 498.

Here, although the contract states that the document is to be returned, it also provides that "[a]cknowledgement and confirmation of Vanco Trading, Inc. acceptance to the above terms is indicated by signature below." Compl., Ex. A. Vanco needed only to sign the proposed agreement in order to accept it and create a contract. The parties stipulate that Van Eck signed the contract in his office in Connecticut. By the terms of the contract, his signature constituted the acceptance. Receipt by Odfjell of the contract was not necessary to create a binding agreement. In fact, the contract provides that if a signed agreement between the customer and Odfjell is not obtained, actual product delivery will constitute acceptance. Id. Therefore, because a contract is formed where and when the last thing is done which is necessary to create the contract, the contract was formed in Connecticut. Accordingly, jurisdiction over Odfjell is permitted under Conn. Gen. Stat. §33-1219(f)(1).

In addition, jurisdiction over Odfjell is also permitted under Conn. Gen. Stat. § 33-1219(f)(4). Vanco's complaint alleges a cause of action sounding in tort by way

7

of Odfjell's tortious conduct when it made fraudulent misrepresentations over the telephone during negotiations.

Federal and state courts in Connecticut construing this clause of the long-arm statute have held that "[f]alse representations entering Connecticut by wire or mail constitute tortious conduct in Connecticut under [this provision]."  Knipple v. Viking Communications, 236 Conn. 602, 610 (1996) (citing David v. Weitzman, 677 F. Supp. 95, 99 (D. Conn. 1987)).  Accordingly, the requirements of § 33-1219(f)(4) are satisfied when a defendant sends fraudulent misrepresentations into Connecticut because the tortious conduct is considered to have been committed within Connecticut.  See e.g., Teleco Oilfield Services, Inc. v. Skandia Insurance Co., 656 F. Supp. 753, 758 (D. Conn. 1987); McFaddin v. National Executive Search, Inc., 354 F. Supp. 1166, 1171 (D. Conn. 1973).

In Knipple v. Viking Communications, the defendant corporation made false statements over the telephone and through the mail regarding the services it would provide to the plaintiff.  "In reliance on [the defendant's] representations, the plaintiffs invested in [the defendant's] private pay telephones by signing . . . a document entitled 'Purchase Agreement.'"  236 Conn. at 605.  "[B]ased on the plaintiffs' undisputed allegations of

8

misrepresentation by way of telephonic and postal communications sent to and received in Connecticut, [the defendant] engaged in tortious conduct in this state, thereby satisfying" §33-1219(f)(4). Id., at 611. Similarly, in David v. Weitzman, the defendant made fraudulent misrepresentations through the mail and over the telephone that induced the plaintiff to buy a condominium. The court found that the plaintiff's papers asserted a prima facie case of tortious conduct in Connecticut sufficient to satisfy the requirements for personal jurisdiction under this clause of the statute. 677 F. Supp. at 97-98.

The facts necessary to satisfy the requirements of § 33-1219(f)(4), found in the allegations of the complaint and the affidavits relating to Odfjell's conduct, are as follows: Navarro, on behalf of Odfjell, expressed to Van Eck that if Vanco contracted with a vessel affiliated with Odfjell and with a terminal owned by Odfjell, the demurrage fee would be waived. Relying on this representation, Vanco contracted with Odfjell, even though its prices were higher than those of other terminals. After the railcars arrived at the terminal, and were untimely loaded into the vessel, the demurrage fee was not waived.

When claiming fraud, "the circumstances constituting fraud or mistake shall be stated with particularity." Fed.

9

R. Civ. P. 9(b).  Under this rule, "a plaintiff should specify the time, place, speaker, and content of the alleged misrepresentations."  Caputo v. Pfizer, Inc., 267 F.3d 181, 191 (2d Cir. 2001).  The complaint should also explain "how the misrepresentations were fraudulent and 'plead those events which give rise to a strong inference that the defendant[ ] had an intent to defraud, knowledge of the falsity, or a reckless disregard for the truth.'"  Id. (quoting Connecticut Nat'l Bank v. Fluor Corp., 808 F.2d 957, 962 (2d Cir. 1987)).  Vanco's complaint alleges that Navarro made representations during the course of their negotiations over the telephone.  The complaint also alleges that Navarro knew or should have known that the representations were false, and that the false and fraudulent assurances were made to induce Vanco to enter into the contract.  Thus, the complaint alleges fraud with sufficient particularity.

   Therefore, construing the facts in a light most favorable to the plaintiff, the court concludes that Vanco has made the necessary prima facie showing that jurisdiction is permitted under §33-1219(f)(1) and (4).

**B.   Due Process**

The second part of the inquiry is whether the exercise of jurisdiction over Odfjell would violate constitutional principles of due process.

> In other words, "[t]he Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful contacts, ties, or relations. . . .  By requiring that individuals have fair warning that a particular activity may subject [them] to the jurisdiction of a foreign sovereign . . . the Due Process Clause gives a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit." . . .  The due process test for personal jurisdiction has two related components: the "minimum contacts" inquiry and the "reasonableness" inquiry.

Cogswell v. American Transit Ins. Co., 282 Conn. 505, 523-24 (2007) (Citations omitted.)

> At minimum, due process requires that there be some act by which the defendant purposefully avail[ed] itself of the privilege of conducting activities within [Connecticut], thus invoking the benefits and protections of its laws, . . . , meaning that the defendant must have taken some action purposefully directed toward [Connecticut], . . .  Personal jurisdiction may be established by either specific jurisdiction (if the suit arises from the defendant's contacts with the forum) or general jurisdiction (based on defendant's continuous and systematic contacts with the forum state).

11

Knauss v. Ultimate Nutrition, Inc., 514 F. Supp. 2d 241, 248 (D. Conn. 2007) (Citations omitted; internal quotation marks omitted.)

> The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State.  The application of that rule will vary with the quality and nature of the defendant's activity, but it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.  This purposeful availment requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of "random," "fortuitous," or "attenuated" contacts . . . or of the "unilateral activity of another party or a third person". . .

Cogswell, 282 Conn. at 530.

> Whether a given defendant has contacts with the forum state sufficient to satisfy due process is dependent upon the facts of the particular case.  Like any standard that requires a determination of reasonableness, the minimum contacts test of International Shoe Co. is not susceptible of mechanical application; rather the facts of each case must be weighed to determine whether the requisite affiliating circumstances are present.

Id., at 525 (internal quotation marks omitted.)

Odfjell maintains all its facilities in Texas and payments are sent to Odfjell in Texas.  Odfjell has a total of three customers who are located in Connecticut, one of which is Vanco.  In its dealings with these three customers, Odfjell has been paid $1.8 million in connection with transactions over the past few years for services rendered

in Texas.  In connection with the transaction at issue here, Vanco initiated communications with Odfjell.  In response to Vanco's inquires, Odfjell began negotiations with Vanco, which was located in Connecticut.  The record contains no additional information about the other two Connecticut companies with which Odfjell has done business.

Similar to the facts in the instant case,[2] in <u>Finnimore v. Jobel</u>, No. CV075002925S, 2007 WL 2390818 (Conn. Super. Aug. 10, 2007), the plaintiff contacted the defendant about building a website.  <u>Id.</u>, at *1.  The court found that, although the defendant traveled to Connecticut during negotiation of the contract and the contract was created in Connecticut, the defendant did not purposefully avail himself of the benefits and protections of the plaintiff's chosen forum.  <u>Id.</u>, at *4.  The court explained:

> In assessing whether there is specific
> jurisdiction, courts look to the "relationship
> among the defendant, the forum and the
> litigation." . . . <u>Thomason v. Chemical Bank</u>, 234
> Conn. 281, 289, 661 A.2d 595 (1995).  As the
> <u>Panganiban</u> court explained, "[a]s long as it
> creates a substantial connection with the forum
> state, even a single act can support
> jurisdiction." . . . <u>Panganiban v. Panganiban</u>,
> supra, 54 Conn. App. at 639.  Nevertheless, in
> applying Connecticut law, the federal court in <u>H.
> Lewis Packaging, LLC v. Spectrum Plastics, Inc.</u>,
> 296 F. Sup. 2d 234, 239 (D. Conn.2003), noted that

---

[2]Vanco contends that this case is similar to <u>Metropolitan Entertainment, Co., Inc. v. Koplik</u>, 20 F. Supp. 2d 354 (D. Conn. 1998).  The court does not agree.

13

> "[i]t is without question that the mere fact that defendant enters into a contract with plaintiff will not, in and of itself, establish personal jurisdiction." The federal court further reasoned that "[t]he fact that it was plaintiff, not defendant, that initiated the business relationship is entitled to some weight in determining minimum contacts." Id., at 240.

Id.

"Only those contacts with the forum that were created by the defendant, rather than those manufactured by the unilateral acts of the plaintiff, should be considered for due process purposes." Edberg, et al. v. Neogen Corporation, 17 F. Supp. 2d 104, 112 (D. Conn. 1998). Otherwise a defendant could be subject to jurisdiction even where it has not purposefully directed any activity towards Connecticut.  Here, Vanco has not met its burden of showing that Odfjell purposefully directed its activities toward Connecticut.

Vanco contends that the defendant has continuous and systematic business contacts with Connecticut.  "In deciding whether general personal jurisdiction is supported, courts traditionally look to whether the defendant has ever been licensed to do business, owned real property; maintained a place of business; employed an agent; maintained a mailing address; held a bank account; or paid taxes in the forum

14

state." Litman v. Walt Disney World Co., 2003 WL 22509409, *5 (E.D. Pa. March 26, 2002).

Continuous and systematic business contacts were found in Powder Coating Consultants v. The Powder Coating Institute, No. 09cv200(WWE), 2010 WL 582613 (D. Conn. Feb. 16, 2010). There, the defendant "maintained a continuous and repeated contact with Connecticut through its membership and trade magazine mailings and solicitation of advertising and exhibition space to Connecticut entities on its mailing list. It [had] also entered into contracts with Connecticut residents for such advertising and exhibit space." Id., at *4. Also, in SGI Partners v. Addison Design Company, Inc., et al., CV 94-0140369, 1995 WL 231026, *3 (Conn. Super. April 12, 1995), the defendant, through its agents, traveled to Connecticut to consult with current and prospective clients, derived 11% of its anticipated revenue for the relevant year from Connecticut, solicited 83 clients from Connecticut, placed 2403 telephone calls to contacts in Connecticut, and maintained contractual and/or business relationships with clients in Connecticut for 20 years.

In contrast, continuous and systematic contacts were not present in F&F Screw Products, Inc. v. Clark Screw Machine Products Co., No. CV 000500360S, 2002 WL 31894843 (Conn. Super. Dec. 10, 2002). There, the third party

defendant had "no offices, employees, sales representatives or sales territories in Connecticut. It [did] not own any interest in real property, hold any bank accounts, or have any warehouses, equipment or telephone numbers in Connecticut." Id., at *8. Also, in Wellner v. Kasarjian, No. CV 96562940, 1999 WL 241737 (Conn. Super. April 6, 1999), the defendant had a number of checking and savings account customers in Connecticut and sent monthly bank statements to the customers by mail into Connecticut. The court found that the defendant's contacts were "extremely limited compared to those cases in which courts have exercised general jurisdiction." Id., at *7.

    Vanco originally submitted the affidavit of Rene Gaanderse to support its contention that Odfjell has systematic and continuous contacts with Connecticut. However, after the parties were given time to conduct jurisdictional discovery, the parties stipulated that Odfjell had contracted with three Connecticut-based companies, one of which was Vanco. The record is silent on the specifics of Odfjell's contacts with the two other Connecticut-based companies. Vanco has failed to make a showing that Odfjell has continuous and systematic contacts with Connecticut.

16

Lastly, Vanco contends, that "the tortious conduct within Connecticut <u>itself</u> is enough to overcome any due process concerns." (Memorandum of Law in Opposition to Motion to Dismiss (Doc. No. 21) at 4.) Vanco relies on <u>Center Capital Corp v. Hall</u>, No. CV 92-0452084S, 1993 WL 214614 (Conn. Super. June 9, 1993), and <u>Buckley v. New York Post Corp.</u>, 373 F.2d 175 (2d Cir. 1973). However, the facts of this case are distinguishable.

In <u>Center Capital Corp.</u>, the defendant employed two salespeople to cover Connecticut. Their sales were made in person, by telephone, and by mail. The defendant addressed a letter and invoice to the plaintiff, which included misrepresentations on which the plaintiff relied. In <u>Buckley</u>, the defendant distributed 1,707 copies of a daily newspaper and 2,100 copies of a weekend edition to persons in Connecticut "by wholesale agents, mail or bus shipment consigned to dealer, and mail subscription." <u>Buckley</u>, 373 F.2d at 177. In addition, it received news dispatches relating to Connecticut from the Associated Press and from five Connecticut contributors and carried advertisements for Connecticut resorts, restaurants, and stores with Connecticut branches. <u>Id.</u>

Based on the foregoing, the court concludes that the exercise of personal jurisdiction over Odfjell would violate

constitutional principles of due process.  Odfjell did not purposefully direct its activities toward Connecticut, and it did not maintain continuous and systematic contacts with Connecticut.

### IV. CONCLUSION

While jurisdiction over Odfjell is permitted under Connecticut's long-arm statute, it would violate principles of due process to subject Odfjell to the jurisdiction of a court in Connecticut.  Accordingly, the Defendant's Motion to Dismiss (Doc. No. 8) is hereby GRANTED.  This case is dismissed.

The Clerk shall close this case.

It is so ordered.

Signed this 15th day of March, 2010 at Hartford, Connecticut.

                                    /s/AWT
                              Alvin W. Thompson
                          United States District Judge